**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TPLOGIX, INC<br><br>Plaintiff(s)<br>v<br><br>COSCO SHIPPING LINES CO., LTD., a foreign corporation, and DOES 1-15, INCLUSIVE,<br><br>Defendants | No. 1:25-cv-07098-MMG<br><br>FIRST AMENDED COMPLAINT; DEMAND FOR PUNITIVE DAMAGES |

Plaintiffs TPLOGIX, Inc. ("TPLOGIX") and Untuckit, LLC ("Untuckit") (hereinafter jointly or collectively "Plaintiffs") bring this admiralty action against Defendants COSCO SHIPPING LINES CO., LTD. ("COSCO") and DOES 1-15 based on its tortious and bad faith refusal to deliver/release the four (4) containerized cargoes more fully described herein below and/or its fundamental breach of a maritime contract for the carriage and delivery of the following cargoes:

- a cargo consisting of 370 cartons of 100 percent cotton men's shirts shipped in Container number CSNU7999108, (hereinafter "Untuckit Cargo 1"),
- a cargo consisting of 287 cartons of 100 percent cotton men's shirts shipped in Container number CSLU1913310, (hereinafter "Untuckit Cargo 2"),
- a cargo consisting of773 cartons of 100 percent cotton men's shirts shipped in Container number OOLU6920507, (hereinafter "Untuckit Cargo 3"), and
- a cargo consisting of 728 cartons of 100 percent cotton men's shirts shipped in Container number OOLU9545499, (hereinafter "Untuckit Cargo 4"). (hereinafter collectively "Subject Cargoes").

Plaintiffs make the following allegations with respect to its claims and causes of action against the Defendants.

## I. Jurisdiction and Venue

1. This action is within the admiralty jurisdiction of this Court under 28 U.S.C. § 1331 and 28 U.S.C. § 1333(1), and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Admiralty In Rem jurisdiction in connection with the Subject Cargoes was originally predicated and obtained via the arrest of the Subject Cargoes based on the ocean carriage by Defendant COSCO of the following containerized cargoes from Hai Phong, Vietnam to Los Angeles/Long Beach in July and August 2024:

-- Untuckit Cargo 1 (consisting of 370 cartons of 100 percent cotton shirts in Container number CSNU7999108 carried by COSCO aboard the MV CMA CGM YUKON under COSCO MBL number COSU6387099070) (hereinafter "Untuckit Cargo 1"),

-- Untuckit Cargo 2 (consisting of 287 cartons of 100 percent cotton shirts in Container number CSLU1913310 carried by COSCO aboard the MV OOCL GENOA under COSCO MBL number COSU6389872650 (hereinafter "Untuckit Cargo 2"),

-- Untuckit Cargo 3 (consisting of 773 cartons of 100 percent cotton shirts in Container number OOLU6920507 carried by COSCO aboard the MV OOCL GENOA under MBL number COSU6389872650 (hereinafter "Untuckit Cargo 3") and

-- Untuckit Cargo 4 (consisting of 728 cartons of 100 percent cotton shirts in Container number OOLU9545499 carried by COSCO aboard the MV OOCL GENOA under COSCO MBL number COSU6389872650 (hereinafter "Untuckit Cargo 4").

3. Following the filing of the original Complaint in the Central District of California on August 14, 2024, the Subject Cargoes were arrested by Order of the Court dated August 19, 2025, and delivered into the custody and control of the Court appointed substitute custodian.

4. Plaintiffs sought and obtained the arrest of the Subject Cargoes because although Plaintiffs had complied with all of their contractual or other obligations to obtain the release and/or delivery of the Subject Cargoes, Defendant COSCO consistently, intentionally, tortiously, wrongfully and in Fundamental Breach of its contract of carriage refused to release and/or deliver the Subject Cargoes to Plaintiffs. Defendant COSCO had long refused to release and deliver the Subject Cargoes to Plaintiff because it was wrongfully and illegally attempting to exercise a lien against the Subject Cargoes allegedly due to an alleged debt the COSCO claimed was owed by TPLOGIX's owner based on her previous relationship with a foreign company that COSCO maintained owed it substantial sums (in connection with services rendered to other cargoes and not involving the Subject Cargoes). COSCO had no right pursuant to its contracts of carriage, at law or in equity to exercise a lien right against the Subject Cargoes based on alleged dets owned by another foreign company with which TPLOGIX's owner previously was involved.

5. TPLOGIX and its counsel, Frank C. Brucculeri, Esq. (then of Kaye Rose & Partners LLP) wrote via email to COSCO on a number of occasions to request the immediate release of the Subject Cargoes, to explain to COSCO that it had no legal, contractual or equitable right to exercise a lien against the Subject Cargoes (based on a debt owned by a foreign company unrelated to TPLOGIX or the carriage of the Subject Cargoes) and to threaten the arrest of the Subject Cargoes if COSCO continued to wrongfully refuse delivery based on a factually and legally meritless lien claim.

6. In the face of Plaintiffs' counsel's several e-mails imploring COSCO to release the cargoes (including legal citations), explaining that COSCO had no right to lien the Subject Cargoes, and threatening arrest of the Subject Cargoes, COSCO failed to respond and provide any factual or legal basis for its claimed right to lien the Subject Cargoes. Accordingly, to prevent further damages that Plaintiffs would suffer if the delivery of the Subject Cargoes was further delayed, and in an effort to obtain immediate delivery of the cargoes (after posting a bond), Plaintiffs filed their Complaint in Rem in the Central District of California seeking the immediate arrest of the Subject Cargoes. Again, Plaintiffs were forced to take this action because COSCO continued to intentionally, tortiously and wrongfully refused to release its purported lien against the Subject Cargoes and to release the Subject Cargoes to Plaintiffs.

7. Plaintiffs were forced to retain counsel and incurred legal fees, court filing fees, U.S. Marshal fees, substitute custodian charges and trucking charges, in order to file the instant in rem Complaint and obtain the arrest and release of the subject cargoes. These costs and expenses, which total more than $65,000, were incurred by Plaintiffs as a sole consequence of COSCO's wrongful exercise of an alleged lien right and/or intentional, negligent and/or tortious refusal to release the Subject Cargoes (also in Fundamental Breach of its contractual obligations). Plaintiffs are entitled to the recovery of those legal fees, expenses and custodia legis costs on equitable principles which unquestionably apply in admiralty matters, as it was absolutely necessary for Plaintiffs to expend these amounts to secure the arrest and ultimate release of the Subject Cargoes and prevent and/or mitigate substantial damages that would have resulted from further delays in delivery of the Subject Cargoes to downstream customers/stores. Critically, Plaintiffs only seek recovery of the legal fees, costs and expenses incurred to obtain

the arrest and release of the cargoes, and not any legal fees associated with the prosecution of this in personam action against COSCO for the recovery of the fees, costs and expenses incurred.

8. As is more particularly set forth herein-below, COSCO's intentional and wrongful refusal to release and/or deliver the Subject Cargoes to Plaintiffs under the circumstances constitutes gross negligence, an intentional tort and/or Fundamental Breach/Unreasonable Deviation of the contracts of carriage (vitiating all of COSCO's contractual rights including the terms and conditions set forth in/on the bills of lading issued by COSCO for the Subject Cargoes and/or those rights provided by the Carriage of Goods by Sea Act) and/or under the General Maritime Laws of the United States).

7. After the court issued its Order for arrest and following the actual arrest of the Subject Cargoes by the United States Marshals Service pursuant to that Court Order (and their removal from the sea terminals where they were being stored after discharge from the ocean vessels on which they were delivered), COSCO was provided with formal and informal notice of the arrest of the Subject Cargoes. Following COSCO receipt of those notices, and only after the physical arrest of the Subject Cargoes pursuant to court order (and their removal from the terminals and delivery to the court ordered substitute custodian) COSCO finally relented and agreed to release the Subject Cargoes. At that point, Plaintiffs had already incurred sums in excess of $60,000 to secure the arrest and removal of the Subject Cargoes.

8. Plaintiffs' maintain and allege that COSCO's post arrest agreement to release the Subject Cargoes to Plaintiffs constitutes an admission that COSCO's attempt to exercise its lien rights and its refusal to release the Subject Cargoes was wrongful, meritless, inconsistent with its legal and/or contractual obligations and/or a fundamental breach and/or unreasonable deviation of the contracts of carriage.

9. Prior to the initiation of the instant action and subsequent arrest of the Subject Cargoes, Defendant COSCO confirmed to Plaintiffs in writing on multiple occasions that it would withhold and/or refuse to release and/or deliver the Subject Cargoes to Plaintiffs when the vessels arrived at the Los Angeles Port. In doing so, COSCO intentionally and without legal justification repudiated its bill of lading contracts of carriage to safely carry and deliver the Subject Cargoes to Plaintiffs and is otherwise in breach of its maritime duties as a carrier and/or as bailee of the Subject Cargoes.

10. COSCO's repudiation of its bills of lading and its refusal to permit delivery of the Subject Cargoes constitutes a Fundamental Breach of the maritime contracts of carriage and/or an Unreasonable Deviation. Accordingly, COSCO should be and is legally precluded and/or estopped from claiming the contractual benefit of any of the terms and conditions contained in the bills of lading it issued in connection with the carriage of the Subject Cargoes and/or the benefits of the Carriage of Goods By Sea Act. Likewise, by virtue of COSCO's intentional refusal to deliver the Subject Cargoes without legal justification (and without any right permitted by its contractual terms), COSCO should be and/or is estopped from claiming the benefit of any of the terms and conditions contained in the bills of lading it issued in connection with the carriage of the Subject Cargoes and/or the benefits of the Carriage of Goods By Sea Act.

11. On information and belief, COSCO claims that pursuant to a clause inserted in fine print on the back of its bill of lading that it is and/was entitled to deliver the Subject Cargoes at any time and/or place it desired. Plaintiffs alleged that under the circumstances here involved, as set forth herein-above and/or below, COSCO should be legally estopped to claim the benefit of any such provision with regard to delivery based on its intentional conduct in wrongfully and/or illegally attempting to exercise a lien against the Subject Cargoes which constitutes a

Fundamental Breach and/or an Unreasonable Deviation under the General Maritime Law and relevant case authorities. Moreover, no term or condition in the COSCO bill of lading allows it to exercise a lien on cargoes being carried under the bill of lading where a debt is owned to COSCO arising from the carriage of other cargoes at the request of other non-related companies.

12. The in personam claims against defendant COSCO and Does 1 through 15 are for damages incurred as a result of COSCO's (and/or DOES 1-15) intentional and wrongful conduct (as aforesaid) in refusing to release and/or deliver the Subject Cargoes until after they were arrested by Court Order. The claims and/or causes of action arise under the General Maritime Lawsd of the United States and/or the Carriage of Goods by the Sea Act, 46 USC 30701 et. seq. (hereinafter "COGSA") (28 U.S.C. § 1331 and § 1333 ).

13. Venue was initially proper in the Central District of California as the in rem property/cargoes subject to arrest were located within that District. Without waive of its right to contest application of COSCO's bill of lading terms and conditions, Plaintiffs agreed to transfer the case to the Southern District of New York at the request of COSCO and based on the alleged application of a forum selection clause contained in COSCO's bills of lading.

14. Initially, the principal relief sought by Plaintiffs original complaint was the arrest of the Subject Cargoes and/or their immediate release. Plaintiffs intended to post a bond for the release of the cargoes to get access to them following their arrest and delivery to the substitute custodian. Having obtained the release of the Subject Cargoes when COSCO permitted delivery following arrest of the Subject Cargoes) the principal relief sought is the recovery of the costs and expenses, including legal fees and custodial legis costs/expenses that were necessarily incurred by Plaintiffs to obtain the arrest and ultimate release of the Subject Cargoes by COSCO.

15. This Court also has the power to declare rights and liabilities under the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs seek that the Court declare that Plaintiffs had an immediate right to possession of the Subject Cargoes at the time that suit was initiated in August 20254 and that COSCO had no right to withhold delivery of the Subject Cargoes based on a lien based on an alleged debt allegedly owned by unrelated parties (Cargonet Logistics Vietnam Co., Ltd (“Cargonet”) and Alfa International Logistics, Inc.(“Alfa”)) on an unrelated cargo of medical masks carried by COSCO in January 2021 aboard the MV COSCO ITALY for and on behalf of Cargonet and Alfa. Critically, neither Plaintiff had anything to do with the carriage of that previous cargo of the two entities (Cargonet and Alfa) with which COSCO then contracted.

16. In withholding delivery of Subject Cargoes from Plaintiffs, COSCO acted with the intention to cause unwarranted injury to Plaintiffs and has acted recklessly and with wanton disregard for Plaintiffs’ rights to delivery pursuant to COGSA, the General Maritime Law and/or COSCO’s bills of lading (which do not provide COSCO with the contractual right to lien Plaintiffs’ cargoes under the circumstances). As a direct and proximate consequence of COSCO’s intentional, reckless and/or grossly negligent conduct in refusing to deliver and/or release the Subject Cargoes to Plaintiffs and/or withholding delivery based on a bogus and inapplicable lien claim that COSCO claims to have against parties in no way related to Plaintiffs or the subject shipments moving under COSCO’s four bills of lading referenced herein above, Plaintiffs are entitled to and seek an award of punitive damages against COSCO to both punish it for its intentional, reckless and/or grossly negligent conduct and to deter it from continuing to act with such wanton, intentional, reckless and grossly negligent disregard for the rights of its customers to deliver of their cargoes.

17. Plaintiffs are informed and believe and thereon alleged that COSCO intentionally and recklessly attempted to use its superior financial position to leverage a payment from Plaintiffs on a debt to which Plaintiffs have no connection and no liability. Furthermore, COSCO wrongfully and intentionally (with full knowledge that it lacks the legal right to do so) withheld the delivery of nearly $780,000 worth of Plaintiffs' cargo in an effort to extort payment of a debt (invoice dated February 15, 2023 to Alfa) in the amount of $183,810. Such intentional, reckless and grossly negligent conduct is outrageous by any standard and warrants the imposition of punitive damages against COSCO. Moreover, such conduct on the part of COSCO constitutes a Fundamental Breach and/or Unreasonable Deviation of and/or in connection with the contracts of carriage – warranting the vitiation of COSCO's rights to rely on COGSA defenses and/or any term in its bills of lading.

## II. The Parties

18. Plaintiff TPLOGIX, Inc. ("TPLOGIX") is a California corporation with its principal place of business in Fountain Valley, California, is a properly licensed freight forwarder of goods to and from the United States in international and marine commerce. TPLOGIX contracted with COSCO on behalf of its customers, including Untuckit, to secure the ocean carriage of Untuckit Cargo 1, Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 from Hai Phong, Vietnam to the Ports of Los Angeles aboard the MV CMA CGM YUKON and the MV OOCL GENOA. At all times relevant herein, as a contracting party under the COSCO bills of lading numbered COSU6387099070 and COSU6389872650, as well as a MERCHANT as defined by COSCO's bill of lading terms and conditions, TPLOGIX had a possessory interest in the Subject Cargoes sufficient to secure an arrest of those cargoes under Admiralty Rule D.

19. Plaintiff Untuckit, LLC ("Untuckit") is a Delaware limited liability corporation with its principal place of business in New York, New York, and is the ultimate consignee, purchaser and owner of Untuckit Cargo 1, Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 which were carried aboard the MV CMA CGM YUKON and the MV OOCL GENOA from Hai Phong, Vietnam to Los Angeles/Long Beach. Untuckit retained Plaintiff TPLOGIX as a freight forwarder to secure ocean transportation for its cargoes (Untuckit Cargoes 1-4) carried aboard the MV CMA CGM YUKON and the MV OOCL GENOA under COSCO bills of lading numbered COSU6387099070 and COSU6389872650. Untuckit is also a MERCHANT as defined by COSCO's bill of lading terms and conditions. As such, as both the owner and ultimate consignee of Untuckit Cargoes 1-4 and as a MERCHANT pursuant to COSCO's bills of lading, Untuckit had an ownership and/or possessory interest in the Subject Cargoes sufficient to secure an arrest of those cargoes under Admiralty Rule D.

20. Defendant COSCO is and was at all times relevant herein an Ocean Carrier with authority issued by the Federal Maritime Commission to issue bills of lading and/or enter into contracts for affreightment for the shipment of cargo by ocean in international trade. COSCO agreed to transport and deliver the Subject Cargoes to Plaintiffs in Los Angeles, but refused delivery (repudiating their agreements) prior to arrival of the ocean going vessels carrying the Subject Cargoes.

21. The true names of each of the Doe defendants are presently unknown to Plaintiffs and are therefore sued in those fictitious names. Plaintiffs will amend their complaint to substitute their true names when they have been determined.

## III. ADDITIONAL Facts Material to All Claims

22. On or about July 3, 2024, COSCO acting in its capacity as a Federal Maritime Commission licensed ocean carrier, issued COSCO Combined Transport bill of lading numbered COSU6387099070 covering the transportation of 370 cartons of 100 percent Men's Cotton shirts in Container number CSNU7999108 aboard the MV CMA CGM YUKON from Hai Phong, Vietnam to Los Angeles, California. A true and correct copy of COSCO's Combined Transport Bill of Lading numbered COSU6387099070 covering Untuckit Cargo 1 is attached hereto at Exhibit 1. In attaching the COSCO bills of lading, Plaintiffs do not waive any right to contest the terms and conditions contained therein.

23. Pursuant to COSCO's issuance of Combined Transport Bill of Lading numbered COSU6387099070, COSCO was legally and contractually obligated to transport and deliver to the Consignee named therein (TPLOGIX) or to the MERCHANT or owner of the cargo (Untuckit) Untuckit Cargo 1 in the same good order as when received by COSCO aboard the MV CMA CGM YUKON in Hai Phong.

24. In fundamental breach and contravention of its obligations as a carrier under the Combined Transport Bill of Lading numbered COSU6387099070 and/or pursuant to its obligations under COGSA, COSCO refused to release and deliver Untuckit Cargo 1 to Plaintiffs, or either of them, despite repeated demands therefore. Rather, in advising Plaintiffs that it would not release or deliver any of the Subject Cargoes, COSCO wrongfully and intentionally relied on its alleged but ultimately faulty right to lien the Subject Cargoes based on an unrelated debt. See footnote 1.

25. As a direct and proximate result of COSCO's failure to release and deliver any of the Subject Cargoes pursuant to COSCO's obligations under the Combined Transport Bill of Lading it issued (including the one numbered COSU6387099070) and/or pursuant to its

obligations as an ocean carrier under the Harter Act, COGSA, and/or the General Maritime Law, Plaintiffs and each of them were forced to obtain the arrest of the Subject Cargoes and to incur costs, expenses and attorney's fees to do so. It was the arrest of the Subject Cargoes that caused and/or lead to COSCO's agreement to release the Subject Cargoes to Plaintiffs.

26. On or about July 22, 2024, COSCO acting in its capacity as a Federal Maritime Commission licensed ocean carrier, issued COSCO Combined Transport bill of lading numbered COSU6389872650 covering the transportation Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 (in three containers) aboard the MV OOCL GENOA from Hai Phong, Vietnam to Los Angeles, California. A true and correct copy of COSCO's Combined Transport Bill of Lading numbered COSU6389872650 covering Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 is attached hereto at Exhibit 2.

27. Pursuant to COSCO's issuance of Combined Transport Bill of Lading numbered COSU6389872650, COSCO was obligated to transport and deliver (release) to the Consignee named therein (TPLOGIX) or to the MERCHANT or owner of the cargo (Untuckit) Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 in the same good order as when received by COSCO aboard the MV OOCL GENOA in Hai Phong.

28. In fundamental breach and contravention of its obligations as a carrier under the Combined Transport Bill of Lading numbered COSU6389872650 and/or pursuant to its obligations under COGSA, COSCO has refused to release and deliver Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 to Plaintiffs, or either of them, despite repeated demands therefore. Rather, in advising Plaintiffs that it would not release or deliver any of the Subject Cargoes, COSCO wrongfully and intentionally relied on its alleged but ultimately faulty right to lien the Subject Cargoes based on an unrelated debt. See footnote 1.

29. As a direct and proximate result of COSCO's failure to release and deliver Untuckit Cargo 2, Untuckit Cargo 3 and Untuckit Cargo 4 pursuant to COSCO's obligations under Combined Transport Bill of Lading numbered COSU6389872650 and/or pursuant to its obligations as an ocean carrier under the Harter Act, COGSA and/or the General Maritime law, Plaintiffs and each of them were forced to obtain the arrest of the Subject Cargoes and to incur costs, expenses and attorney's fees to do so. It was the arrest of the Subject Cargoes that caused and/or led to COSCO's agreement to release the Subject Cargoes to Plaintiffs, but only after Plaintiffs were forced to incur costs, expenses and legal fees in excess of $65,000 to obtain the arrest. Plaintiffs seek recovery of those expenses which were necessary to obtain delivery of the Subject Cargoes, and each of them.

30. Plaintiffs have paid the freight charges due and owing to COSCO under COSCO Combined Transport Bills of Lading COSU6387099070 and COSU6389872650 and have otherwise performed all obligations required of them by the said COSCO bills of lading or applicable law or, are otherwise excused from performing said obligations.

31. As set forth herein-above, COSCO wrongfully and in breach of its legal and contractual obligations refused to release or deliver any of the Subject Cargoes despite repeated emails imploring them to do so and explaining why COSCO's claim to a lien on unrelated cargoes could not serve as a factual or legal basis to preclude delivery of the Subject Cargoes.

32. Plaintiffs are informed and believe and thereon allege that COSCO held and refused to deliver the Subject Cargoes in an illegal and/or wrongful and intentional effort to extort payment from Plaintiffs of an unrelated alleged debt and invoice to Alfa relating to a shipment of medical masks carried by COSCO for Alfa and Cargonet in January 2022. A true and correct copy of the COSCO invoice to Alfa that COSCO is insisting be paid by Plaintiffs is

attached hereto at Exhibit 3. Plaintiffs are not related in any way to either Alfa or Cargonet and are not alter egos of either company. Plaintiffs explained as much to COSCO via email prior to initiating the within action seeking the arrest of the Subject Cargoes, but COSCO steadfastly refused to respond to Plaintiffs efforts to secure the immediate release of the Subject Cargoes. Plaintiffs, and each of them, denied and continue to deny liability to COSCO for the alleged debt and Invoice to Alfa (Exhibit 4). Neither TPLOGIX nor Untuckit had any involvement in the shipment of medical masks in January 2022 which allegedly gives rise to COSCO's demand for payment on the Alfa invoice (and its illegal, wrongful, and intentional refusal to release the Subject Cargoes to Plaintiffs).

33. TPLOGIX and Untuckit are separate corporate entities properly formed pursuant to the laws of California and Delaware, and are entitled to the presumption of corporate separateness pursuant to U.S. Supreme Court Jurisprudence. See, e.g., United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."). The presumption of separateness requires courts to "start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception. Care should be taken on all occasions to avoid making the entire theory of the corporate entity . . . useless." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967).

34. Neither TPLOGIX nor Untuckit are affiliated with or related to Alfa or Cargonet, and there are no facts or circumstances that would justify requiring that TPLOGIX or Untuckit be held liable or responsible for COSCO's claims against Cargonet and/or Alpha related to a January 2022 shipment involving different parties, a different vessel and a different COSCO bill of lading (and an invoice to Alpha dated February 15, 2023).

35. Plaintiffs are both parties to the COSCO bills of lading referred to above as Merchants (as defined by COSCO's bills of lading's terms and conditions) in that Plaintiff TPLOGIX is the consignee named on the front of both COSCO bills of lading and in that Plaintiff Untuckit is the company entitled to possession of the goods.

36. Pursuant to each of COSCO's bills of lading (COSU6387099070 and COSU6389872650) which constitute the contract(s) of carriage of the Subject Cargoes from Hai Phong to Los Angeles, COSCO and Does 1 through 15 agreed to timely deliver the cargoes to Plaintiffs in the same good order, condition, and quantity as when it was received.

37. In fundamental breach of its contracts of carriage, COSCO and Does 1 through 15 intentionally and without right or justification failed and refused to deliver or make available for delivery to Plaintiffs the Subject Cargoes, when the cargoes arrived in Los Angeles and were unloaded from the Vessels. Rather, prior to arrival of the Vessels carrying the Subject Cargoes in Los Angeles, COSCO advise Plaintiffs that it would not release or deliver the Subject Cargoes to Plaintiffs on arrival, but rather claimed a lien against the Subject Cargoes related to a debt owed by Alfa on a prior shipment of medical masks. See FN1 infra.

38. COSCO's wrongfully repudiated its agreement to carry and deliver the Subject Cargoes by interposing an alleged lien on an unrelated debt owed by Alfa, and refusing to release the Subject Cargoes until the Alfa debt was satisfied in full by TPLOGIX. That conduct as also described herein-above, and COSCO's refusal to release the Subject Cargoes on arrival in Los Angeles, constitutes a Fundamental Breach of the contract of Carriage and/or an Unreasonable Deviation – which acts to deprive COSCO of its contractual and legal defenses, including its alleged right to deliver the cargo at a time and place of its discretion (pursuant to a term in the COSCO bills of lading).

39. As a direct and proximate result of the fundamental, intentional and/or tortious breaches of the respective contracts of carriage by Defendant COSCO and Does 1 through 15, and/or the Defendants intentional repudiation of the contracts, Plaintiffs were forced to seek and obtain the arrest of the Subject Cargoes to obtain their release – and in doing so incurred more than $65,000 in costs, expenses, custodia legis expenses and/or attorney's fees to do so, no part of which has been paid by COSCO or Does 1 through 15.

## IV. Causes of Action

### First Cause of Action –

### Repudiation and/or Breach of Maritime Contract (COSCO Bills of Lading)

### under COGSA and General Maritime Law

### (against COSCO and Does 1–15)

40. Plaintiffs incorporate paragraphs 1 through 39 as if fully set forth in this section.

41. The Carriage of Goods by the Sea Act ("COGSA") sets out, among other things, the duties of ocean carriers in their transport of goods. See section 4(5), Ch. 229, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701. Likewise, the general maritime law of the United States imposes a duty on ocean carriers like COSCO to safely and prudently load, stow, secure, carry, and deliver cargoes identified on bills of lading issued by them (like the Untuckit Cargos 1-4) in the same good order, condition, and quantity as when received by the carriers and/or the Vessel(s).

42. In consideration for specified fees and charges, which have been fully paid to COSCO as required, COSCO and Does 1 through 15 or those acting on their behalf agreed to carry the Subject Cargoes from the place of receipt at the ports of loading in Hai Phong, Vietnam

to the place of delivery at the ports of discharge in Los Angeles and to deliver the cargoes Plaintiffs as required by the terms and conditions of COSCO's bills of lading numbered COSU6389872650 and COSU6389872650.

43. COSCO and Does 1 through 15, or those acting on their behalf, loaded and stowed the Subject Cargoes aboard the ocean vessels at the port of loading and issued clean COSCO Combined Transport bills of lading numbered COSU6389872650 and COSU6389872650 for the subject Untuckit Cargoes.

44. In intentionally, wrongfully and illegally claiming and exercising a lien against the Subject Cargoes, and in thereafter refusing without proper legal justification to deliver them Plaintiffs when the cargoes arrived and were unloaded in Los Angeles (as required by COGSA, the Harter Act, the General Maritime law and/or COSCO's bills of lading, COSCO was (in August of 2024) in willful and intentional breach of its contractual COGSA obligations and those imposed by the General Maritime Law and/or its bills of lading (referenced herein-above) to safely transport and deliver the cargoes to the Consignee or Merchant (as defined by COSCO's bills of lading) (in this case Plaintiffs TPLOGIX and Untuckit). Moreover, COSCO repudiated the contract when it advised Plaintiffs (prior to arrival of the cargoes in Los Angeles) that it would refused to deliver the Subject Cargoes when the vessels arrived in Los Angeles. In doing so, and also in later refusing to release and deliver the Subject Cargoes to Plaintiffs based on a bad faith claim to a lien (based on a debt owed by Alfa on an unrelated cargo of medical masks in 2023) (see FN1), COSCO (and Does 1-15) Fundamentally Breached the Contracts of Carriage and/or Unreasonably Deviated from those Contract of Carriage.

45. Plaintiff TPLOGIX repeatedly demanded that COSCO release and deliver Subject Cargoes to Plaintiffs, and explained to COSCO that its lien claim was meritless (while

threatening the arrest of the Subject Cargoes). Plaintiffs' demands, however, went unanswered, forcing Plaintiffs to file this action to arrest, recover and possess the Subject Cargoes.

46. In contravention of its legal obligations as aforesaid, and based on its absurd and wrongful contention that it had a right to lien the Subject Cargoes, COSCO wrongfully, negligently, recklessly and/or intentionally put a hold on the release and delivery of the Subject Cargoes. That hold placed by COSCO based on a lien claim/right that did not exist, was intentional, reckless, negligent and in breach of COSCO's obligations pursuant to its bills of lading and pursuant to its obligations as a carrier under COGSA and the General Maritime Laws of the United States.

47. COSCO intentional, negligent, grossly negligent and/or wrongful conduct (which constitutes a Fundamental Breach of contract and/or an Unreasonable Deviation) forced Plaintiffs to file the instant action and obtain the arrest of the Subject Cargoes to obtain their immediate release. In doing so, Plaintiffs incurred court costs, attorney's fees, U.S. Marshal fees, substitute custodian fees and trucking charges in excess of $65,000, which Plaintiffs now seek to recover from COSCO.

48. As a direct and proximate result of COSCO's conduct as hereinabove described, Plaintiffs have sustained damages in the approximate amount of $65,000, no part of which has been paid by COSCO or Does 1 through 15. COSCO and DOES 1 through 15 are liable for the costs, expenses and legal fees necessary to arrest and obtain the release of the Subject Cargos in an amount to be proved at trial and consequential damages for the delay in delivery of the cargoes caused by COSCO's willful, unwarranted and legally unjustified refusal to release and deliver the Subject Cargoes to Plaintiffs.

49. Plaintiffs also ask this Court to award punitive damages against COSCO for its intentional, reckless, wanton and outrageous conduct (as set forth herein) in refusing to release and deliver the Subjct Cargoes to Plaintiffs in contravention of its clear contractual and legal responsibilities and without any reasonable or valid justification.

**Second Cause of Action**

**Repudiation and/or Breach of Maritime Contract (COSCO Bills of Lading)**

**under COGSA and General Maritime Law**

**(against COSCO and Does 1–15)**

49. Plaintiffs incorporate paragraphs 1 through 39 and 41 through 49 as if fully set forth in this section.

50. The Carriage of Goods by the Sea Act ("COGSA") sets out, among other things, the duties of ocean carriers in their transport of goods. See section 4(5), Ch. 229, 49 Stat. 1207 (1936), reprinted in note following 46 U.S.C. § 30701. Likewise, the general maritime law of the United States imposes a duty on ocean carriers like COSCO to safely and prudently load, stow, secure, carry, and deliver cargoes identified on bills of lading issued by them (like the Untuckit Cargos 1-4) in the same good order, condition, and quantity as when received by the carriers and/or the Vessel(s).

51. In consideration for specified fees and charges, which have been fully paid to COSCO as required, COSCO and Does 1 through 15 or those acting on their behalf agreed to carry the Subject Cargoes from the place of receipt at the ports of loading in Hai Phong, Vietnam to the place of delivery at the ports of discharge in Los Angeles and to deliver the cargoes to Plaintiffs as required by the terms and conditions of COSCO's bills of lading numbered COSU6389872650 and COSU6389872650. The Subject Cargoes were in good order and

condition when they were tendered to COSCO and Does 1 through 15 or those acting on their behalf at the port of loading.

52. COSCO and Does 1 through 15, or those acting on their behalf, loaded and stowed the Subject Cargoes 1-4 aboard the ocean vessels at the port of loading and issued clean COSCO Combined Transport bills of lading numbered COSU6389872650 and COSU6389872650 for the Subject Cargoes.

53. In refusing without proper legal justification to deliver Subject Cargoes (and/or by claiming a lien against the Subject Cargoes) as required by COGSA, the Harter Act, the General Maritime Law and/or COSCO's bills of lading, COSCO is in willful breach of its COGSA obligations and those imposed by the General Maritime Law and/or its bills of lading (referenced herein-above) to safely transport and deliver the cargoes to the Consignee or Merchant (as defined by COSCO's bills of lading) (in this case Plaintiffs TPLOGIX and Untuckit). By advising Plaintiffs prior to arrival that it would not release the Subject Cargoes because of a non-existent lien on the Subject Cargoes, COSCO willfully and intentionally repudiated and/or breached its obligations (constituting a Fundamental Breach and/or an Unreasonable Deviation).

54. Plaintiff TPLOGIX and its counsel Frank Brucculeri repeatedly requested, implored and/or demanded that COSCO release and deliver Subject Cargoes to Plaintiffs, but its demands went unanswered, forcing this action to recover and possess the Subject Cargoes via arrest pursuant to Admiralty Rules.

55. COSCO also wrongfully put a hold on the release and delivery of the Subject Cargoes prior to their scheduled arrival at the Southern California ports. That hold placed by COSCO on the Subject Cargoes (was expressly based on COSCO's exercise of its non-existent lien rights) and was and is in breach of COSCO's obligations pursuant to its bills of lading and

pursuant to its obligations as a carrier under COGSA and the General Maritime Laws of the United States.

56. As a proximate result of those actions or omissions or both on the part of COSCO and DOES 1 through 15, Plaintiffs were forced to file this action and obtain the arrest of the Subject Cargoes in order to obtain the release of the Subject Cargoes. Plaintiffs incurred approximately $65,000 to obtain the arrest of Subject Cargoes and ultimately to secure the release of the Subject Cargoes.

57. Plaintiffs also ask this Court to award punitive damages against COSCO for its intentional, reckless, wanton and outrageous conduct (as set forth herein) in refusing to release and deliver the Subject Cargoes to Plaintiffs based on a meritless and non-existent lien and in contravention of COSCO's clear contractual and legal responsibilities and without any reasonable or valid justification.

**Third Cause of Action – Bailment/Tort**

**(against COSCO and Does 1–15)**

58. Plaintiffs incorporate paragraphs 1 through 57 as if fully set forth in this section.

59. COSCO and Does 1 through 15 or those acting on their behalf arranged, received, and/or accepted Subject Cargoes in good order and condition for shipment on the chosen carrier Vessels. In so doing, COSCO and Does 1 through 15 or those acting on their behalf formed a bailment as a matter of law.

60. The bailment formed as a matter of law required COSCO and Does 1-15 to deliver the Subject Cargoes to Plaintiffs at the destination port in the same good order and condition as when received by COSCO and Does 1-15.

61. In refusing without proper legal justification (and based on a non-existent lien) to deliver Subject Cargoes to Plaintiffs. COSCO was in willful breach of its bailment obligations imposed by law to safely care for and delivery of the Subject Cargoes.

62. In refusing without proper legal justification to deliver Untuckit Cargos 1-4 to COSCO is in willful breach of its bailment obligations to safeguard and protect Plaintiffs' cargoes and to return them and/or deliver them Plaintiffs at Plaintiffs' request.

63. Plaintiff TPLOGIX and its counsel repeatedly demanded that COSCO release and deliver the Subject Cargoes to Plaintiffs, but its demands went unanswered, forcing this action to recover, possess arrest and secure the release of the Subject Cargoes and for damages against COSCO for its tortious and intentional breach of its bailment obligations to deliver Subject Cargoes to Plaintiffs.

64. As a proximate result of those actions or omissions or both on the part of COSCO and DOES 1 through 15, Plaintiffs were forced to file this action and obtain the arrest of the Subject Cargoes in order to obtain the release of the Subject Cargoes. Plaintiffs incurred approximately $65,000 to obtain the arrest of Subject Cargoes and ultimately to secure the release of the Subject Cargoes.

65. Plaintiffs also ask this Court to award punitive damages against COSCO for its intentional, reckless, wanton and outrageous conduct (as set forth herein) in refusing to release and deliver Subject Cargoesto Plaintiffs in contravention of its clear contractual and legal responsibilities and without any reasonable or valid justification.

## V. Prayer For Relief

a. For an Order by the Court entering judgment in favor of Plaintiffs and each of them against Defendant COSCO and Does 1-15 for the costs, expenses and legal fees incurred to obtain the arrest and/or release of the Subject Cargoes.

b. That judgment in the amount to be proven at the time of trial and costs and expenses be granted in favor of Plaintiffs and against the Defendant COSCO.

c. For an award of punitive damages against Defendant COSCO and Does 1-5 consistent with the facts and circumstances alleged herein-above;

d. For prejudgment interest on all sums that shall be adjudged to be owing;

e. For such other relief as may be appropriate, including attorneys' fees and costs incurred since the Subject Cargoes have been released and in order to obtain recovery of Plaintiffs' expenses of arrest; and

f. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHALOS & CO., PC
Attorneys for Plaintiffs

Date: October 29, 2025

By: /s/George M. Chalos
George M. Chalos, NY Bar No. 2901031
55 Hamilton Avenue,
Oyster Bay, NY 11771
Tel: (516) 714 4300
Email: gmc@chaloslaw.com